This suit is brought by the Commercial National Bank in Shreveport and Charles K. Leslie, receiver of the Commercial National Bank of Shreveport. They allege that on December 10, 1937, the Commercial National Bank in Shreveport was the record owner of the following described property, to-wit:
W. 1/2 of S.W. 1/4 of Section 13; N.E.1/4 of N.E. 1/4. of Section 6; and an undivided one-half (1/2) interest in the W. 1/2 of the N.W. 1/4 and the N.E. 1/4 of N.W. 1/4 of Section 5; Township 22 North of Range 10 West, situated in Webster Parish, Louisiana.
That certain mineral interests in and to said properties, especially the W. 1/2 of the S.W. 1/4 of Section 13, were sold prior to the legal title being placed in the Commercial National Bank in Shreveport and that while the record title was in said Bank, the equitable title was vested in the Commercial National Bank of Shreveport and that the record title was held by said Commercial National Bank in Shreveport for the use and benefit of the receiver of the Commercial National Bank of Shreveport.
They further alleged:
"IV. That on said date, viz; December 10, 1937, M.R. Herrick, a resident of Webster Parish, Louisiana, approached petitioners with a view of purchasing said lands, and at that time the said Herrick was advised by petitioners that, owing to the fact that the equitable title was in the Commercial National Bank of Shreveport, in Receivership; that any proposition to purchase said lands would have to submitted to the Comptroller of the Currency at Washington, D.C., and his approval obtained, and the said Herrick was further informed by petitioners that no mineral rights in the W. 1/2 of the S.W. 1/4 of Section 13 would be conveyed with said 80 acres for the reason that said mineral rights had been sold, prior to legal title being vested in the said Commercial National Bank in Shreveport and that an undivided interest in the minerals under the other lands described in Article II hereof had been disposed of prior thereto, and that only a one-half interest in the remaining mineral rights in the lands other than said 80 acres, would be conveyed in any sale that was made, and with such information, said Herrick, submitted an offer to petitioners to buy said properties, as set out in Article VI hereof.
"V. That subsequent to receiving the information set out in Article IV hereof, the said M.R. Herrick signed, in duplicate, a letter addressed to the Comptroller of the Currency, submitting to the Comptroller a proposition to purchase said lands, in which letter it was distinctly stated that no mineral rights were to be conveyed in the W. 1/2 of the S.W. 1/4 of said Section 13; only 1/4th of a 1/2 interest in the minerals in the lands in Section 5, all of which will appear from a duplicate original of said letter, as executed by the said Herrick, and submitted to the Comptroller of the Currency, annexed hereto and made a part hereof.
"VI. That on December 10, 1937, when the said Herrick offered to buy said property, he deposited with petitioners $900.00, being the amount referred to in said letter from the said Herrick to the Comptroller; thereupon, the said Receiver of the Commercial National Bank of Shreveport addressed a letter to the said M.R. Herrick, *Page 451 
setting out the terms and conditions under which the said sale was to be made and the conditions upon which the $900.00 was received, and the said Herrick signed at the bottom of said letter, acknowledging the terms therein to be correct; a copy of said letter signed by the said Herrick is annexed hereto and made a part hereof.
"VII. That the proposition of the said Herrick to buy said lands, as set forth in Articles IV and VI herein, was duly submitted to the Comptroller by the Receiver of the Commercial National Bank of Shreveport, and his approval of the sale upon the terms of said offer was duly received, and a court order authorizing the sale upon the terms set forth, obtained, all of which will be shown on trial hereof, and that pursuant thereto, your petitioner, the said Commercial National Bank in Shreveport, as the holder of the legal title, executed a deed before F.M. Hudson, Notary Public in and for Caddo Parish, Louisiana, in favor of M.R. Herrick, on January 3, 1938, a copy of which is annexed hereto and made a part hereof.
"VIII. That said deed, with reference to the 80 acres described as the W. 1/2 of the S.W. 1/4 of Section 13, after describing said property, contains the following provisions:
"`That all minerals were sold out of this tract of land before present vendor acquired same; therefore, all minerals are excluded from this conveyance.'
"IX. Petitioners show that at the time of executing said deed, they did not know that the sales of minerals affecting said 80 acres were made more than ten years prior to December 10, 1937, and that the minerals so conveyed had by the prescription of ten years non-use expired and petitioner was the fee owner of the said 80 acres.
"X. Petitioners show that the said M.R. Herrick, after receiving the deed referred to in Article VII hereof, made an investigation of the records and ascertained that the title to the minerals in and under said 80 acres were vested in petitioner, Commercial National Bank in Shreveport; thereupon he prepared or had his attorney prepare, a quit-claim deed, a copy of which is annexed hereto and made a part hereof, and presented it to L.D. Leeper, Vice President of said Bank, for execution, representing to the said Leeper that he simply wanted the same so that when the mineral interest previously sold expired in the future, it would revert to him.
"XI. That the said Leeper, without any authority from the said Receiver or from said Comptroller, and without consulting them, and acting upon the representations of the said Herrick, executed the quitclaim deed of date January 13, 1938, a copy of which is annexed hereto and made a part hereof.
"XII. That recently your petitioner, Charles K. Leslie, as Receiver of the Commercial National Bank of Shreveport, learned that on December 10, 1937, and at the time of the execution of the deed of date January 3, 1938, petitioner, Commercial National Bank in Shreveport, was the legal owner of the minerals in and under the W. 1/2 of the S.W. 1/4 of Section 13, Township 22 North of Range 10 West, and that by the fraud and misrepresentation with reference to such fact, made to L.D. Leeper, as set out in Article X hereof, the said Herrick obtained the quit-claim deed of date January 13, 1938, referred to in Article XI hereof.
"XIII. That there was no consideration paid for the conveyance of the said mineral interest by the said Herrick to petitioners, as shown in said quit-claim deed of date, January 13, 1938, and that said deed, by virtue of the said fraud practiced by the said Herrick as aforesaid, and on account of the want of consideration therefor, should be decreed null and void, and the recordation thereof in Conveyance Book 126, page 617 of the Records of Webster Parish, Louisiana, ordered cancelled and erased therefrom.
"XIV. Petitioners show that on April 6, 1938, the said Herrick purported to convey an undivided one-half interest in the lands described in Article II of this petition to R.D. Watkins, a resident of Webster Parish, Louisiana, for a recited consideration of $900.00 cash; that said deed was executed pursuant to an agreement between the said Herrick and the said Watkins, made in December, 1937, prior to the said Herrick offering to buy said property from petitioners, and that in making the offer to buy said property from petitioners, the said Herrick, pursuant to said agreement, acted for himself and as the said Agent of said Watkins, the said Watkins putting up the $900.00 consideration paid petitioners for said property, the consideration recited in deed of date January 3, 1938, recorded in Conveyance Book *Page 452 
128, page 318, of the Records of Webster Parish, Louisiana.
"XV. That the said Watkins is not a third party, therefore, dealing upon the face of the public record, and is bound by the acts, frauds and representations of the said Herrick and, in the alternative, if it be held that the said Watkins is a third party, not bound by the acts and representations of the said Herrick, then petitioners show that there was no consideration paid for quit-claiming the minerals lying in and under the W. 1/2 of the S.W. 1/4 of Section 13; that such fact is shown by the quit-claim deed of date January 13, 1938, as recorded in the Conveyance Records of Webster Parish, Louisiana, and since said fact was a matter of record, the said Watkins was put on notice thereof, and acquired only such title to the said minerals in said 80 acres from the said Herrick, as he had to convey, and your petitioners are therefore entitled to have the deed from the said Herrick to the said Watkins, to the extent that it conveyed an interest in the minerals lying in and under the W. 1/2 of the S.W. 1/4 of said Section 13 decreed null and void.
"Wherefore, petitioners pray that the said Mr. M.R. Herrick and the said R.D. Watkins be duly cited and served with a copy of this petition, according to law, and after legal delays that there be judgment in favor of your petitioners and against the said Herrick and the said Watkins decreeing that certain quit-claim deed from petitioner, Commercial National Bank in Shreveport, to the said Herrick, of date January 13, 1938, as recorded in Conveyance Book 125, page 618, of the Records of Webster Parish, Louisiana, to be null and void and of no effect, and ordering said deed cancelled and erased from the records of Webster Parish, and decreeing the said deed from the said Herrick to the said Watkins of an undivided one-half interest in and to fee title to said 80 acres, described as the W. 1/2 of S.W. 1/4 of Section 13, of date April 6, 1938, as recorded in Conveyance Book 125, page 318 of the Records of Webster Parish, Louisiana, insofar as it conveyed to the said Watkins an undivided one-half interest in the minerals lying in and under said 80 acres of land to be null and void, and ordering such conveyance as recorded, to the extent of the mineral interest in said 80 acres of land, cancelled and erased from the Conveyance Records of Webster Parish, Louisiana, and for general and equitable relief."
Both defendants filed exceptions of no cause and no right of action, which were overruled by the lower court.
Both defendants answered the petition, but plaintiffs dismissed their suit as to defendant Watkins and we will, therefore, from this point deal only with the defendant, Herrick.
Herrick answered the petition as follows:
"1. Allegations of Paragraph 1 are denied for want of sufficient information and belief.
"2. Answering Paragraph 2, defendant admits that the Commercial National Bank in Shreveport was the record owner of the property described on the date alleged, but shows that the records of Webster Parish are the best evidence of the ownership of said lands.
"3. Answering Paragraph 3, this defendant is informed by the official records of Webster Parish that some mineral interests in the properties described were alienated prior to the acquisition of title by the plaintiff, Commercial National Bank in Shreveport, but plaintiffs' allegations in that regard are so vague and indefinite in identifying the sales included in the allegations that defendant calls for strict proof by the production and filing in evidence on trial hereof all such deeds, or certified copies thereof, with proof of registry, as being the best evidence thereof; the full and legal title in the Commercial National Bank in Shreveport is admitted according to the allegations of Paragraph 2, supra; defendant denies all the other allegations of Paragraph 3 and avers that he is bound only by such proof of such allegations as may be disclosed by the official records of Webster Parish prior to December 10, 1938.
"4. Answering Paragraph 4, defendant admits making an offer to purchase the said lands, but avers that such offer was made to an agent of the Commercial National Bank in Shreveport, who stated that the Commercial National Bank in Shreveport was the owner of the land and that the deed would have to be executed and signed by an officer of such Bank; that defendant's said offer was to purchase all of the right, title and interest of such Bank in and to W. 1/2 of S.W. 1/4, Section 13, and all of the Bank's right, title and *Page 453 
interest in and to the lands in Section 6, the said Bank reserving no mineral rights under the lands in Section 13 add only an undivided 1/2 interest of the Bank's interest in the minerals under the lands in Section 6; that the said agent, after conferring with his principal, agreed to defendant's proposition; that at that time the said agent made some statement about the Comptroller of Currency at Washington, but that such statement did not impress defendant, who was unfamiliar with the workings of national banks; that defendant then told the said agent that he, defendant, was only interested in getting a good title to what he offered to buy and that he was leaving it up to the Bank to work out the details; the remaining allegations of Paragraph 4 are denied.
"5. Answering the allegations of Paragraph 5, defendant avers that W.J. Crowder, agent of the Commercial National Bank in Shreveport, was handling all of the details of the proposition and that defendant instructed said agent to work it out in strict accordance with the offer and acceptance set out in Paragraph 4 herein; that if defendant signed such an instrument it was upon the representations of the Bank's agent that same was in accordance and in furtherance of the said offer and acceptance made prior thereto.
"6. Answering the allegations of Paragraph 6, defendant admits that he deposited the sum of $900.00 with the Commercial National Bank in Shreveport, or its agent, but avers that if he received and signed any such instrument alleged in this Paragraph, it was signed upon the representations of the agent for the said Commercial National Bank in Shreveport that same was a formality in furtherance of the original offer by defendant and acceptance by the said Commercial National Bank in Shreveport.
"7. Answering Paragraph 7, defendant admits the execution of the deed in his favor by the Commercial National Bank in Shreveport on the date alleged, but denies, for want of information and belief, the remaining allegations of said paragraph.
"8. Answering Paragraph 8, defendant avers that the deed itself is the best evidence of its contents.
"9. Answering the allegations of Paragraph 9, defendant avers that he was without any knowledge of what was known, or not known, by plaintiffs or their agents, but avers, as a matter of law, that plaintiffs are charged with full notice of all matters affecting the title registered upon the public records and that they are presumed to know the effect of the law of prescription, none of which was misrepresented to them by this defendant and all of which was open to their full inspection.
"10. Answering the allegations of Paragraph 10, it is admitted that a deed was executed by the Commercial National Bank in Shreveport, the record owner, in favor of defendant, but avers that the deed itself is the best evidence of its import and contents, all other allegations are denied.
"11. Answering the allegations of Paragraph 11, defendant admits the proper execution of the deed alleged on the date alleged, but denies all other allegations of Paragraph 11 of plaintiffs' petition.
"12. Answering the allegations of Paragraph 12, defendant avers that the records of Webster Parish were open at all times to an inspection by both plaintiffs and denies that any fraud or misrepresentation was practiced by this defendant upon anyone in connection with the obtaining of the said quit-claim deed.
"13. The allegations of Paragraph 13 of plaintiffs' petition are denied.
"14. Answering the allegations of Paragraph 14 of plaintiffs' petition, it is admitted that R.D. Watkins is the owner of an undivided one-half interest in the lands described in Article 2 of plaintiffs' petition and that the deed conveying same is recorded in the records of Webster Parish, Louisiana, as alleged, but avers that such sale was a bona fide transaction.
"15. The allegations of Paragraph 15 of plaintiffs' petition are denied.
"Wherefore, prays that the demands of plaintiffs be rejected at their costs. For all further orders and decrees necessary and for full, general and equitable relief."
The case was tried in the lower court and judgment rendered for plaintiffs, annulling and voiding the quit-claim deed as prayed for. Defendant is now prosecuting this appeal from that judgment.
There is no dispute over one fact and that is that the Commercial National Bank in Shreveport was the record owner of the lands purchased by Herrick, having acquired the 80 acres involved in this suit at a foreclosure sale in Webster Parish, *Page 454 
Louisiana, brought by the receiver of the Commercial National Bank of Shreveport, and that the deed transferring the lands to Herrick was executed by the Commercial National Bank in Shreveport by L.D. Leeper, vice president, who was duly authorized by resolution of the board of directors of said Bank. The consideration was $900 cash in hand paid. The deed bears date of January 3, 1938.
The Commercial National Bank in Shreveport, being the record owner of the property, could and did transfer the property to Herrick legally. Such a deed, without any action on the part of the Comptroller of Currency or the Federal Court, would have been legal and have placed good title in Herrick. It follows, therefore, that the dealings between the Commercial National Bank of Shreveport and the Comptroller and the petitions and orders authorizing the sale by the Receiver of the Commercial National Bank of Shreveport were for the protection of the vendor, the Commercial National Bank in Shreveport, and the receiver, under some private agreement between them and was of no concern to Herrick. There was no public record anywhere showing any interest the Commercial National Bank of Shreveport ever had in the lands and any private agreement between the two Banks could not in any way affect Herrick. The deed from the Commercial National Bank of Shreveport to him would have been worthless for the reason it was not the record owner and had never been. All the transactions between the receiver, the Comptroller and the Federal Court, insofar as Herrick is concerned, are irrelevant and immaterial to a decision of the issues here for the reason that the only transactions dealing with real estate which can affect third persons are those which are placed on the public records.
The allegations of fraud practiced in this transaction by Herrick are not proved and no discussion of this issue is necessary.
Mr. Herrick is shown by the record to be an uneducated man, the fourth grade having been as far as he went in school and, apparently, he has had very little experience in dealing with real estate, for he did not know the meaning of the words "vendor" and "vendee". He frankly stated in speaking of these two words that he did not know the meaning of "these old French words" and had had one of his friends look them up in the dictionary for him so that he could know what was meant by their use in the deed.
Mr. Herrick lives in the northern part of Webster Parish, near the location of the lands involved here. He learned through some source that the Commercial National Bank in Shreveport was offering it for sale and he went to the Bank to inquire for the one in charge of the lands. He was directed to Mr. Crowder. Herrick made an offer of $5 per acre, which was a satisfactory price to those in charge, and he was informed that certain formalities would have to be gone through before title could be transferred. He relied on those in charge to give him a good title and he signed all letters and documents prepared for his signature by these officers and employees of the two Banks, one of which was addressed to the Comptroller in the form of an offer to pay over the price of $900. Herrick performed every act requested of him to hasten the consummation of the deal which was finally consummated on January 3, 1938, when deed was executed.
The real estate is described in the deed as three tracts and following the description, (W. 1/2 of S.W. 1/4 of Section 13), the land containing the minerals in dispute here, the deed recites,
"All minerals were sold out of this tract of land before present vendor acquired same, therefore, all minerals are excluded from this conveyance."
On January 13, 1938, just ten days after the execution of the deed, the vendor at vendee's request, executed another instrument. It was executed by the same official of the vendor who had executed the deed. The pertinent parts of said second instrument are as follows:
"That Whereas, on January 8, 1938, appearer herein for a cash consideration of $900.00, sold and conveyed by warranty deed unto M.R. Herrick, husband of Mrs. Alvis Harper Herrick, a resident of Webster Parish, Louisiana, the following described property situated in Webster Parish, Louisiana, to-wit:
"(Among other lands). The W 1/2 of S.W. 1/4 of Section 13, Township 22 North, Range 10 West; containing 80 acres more or less.
"That in said deed conveying the above specifically described lands, the following *Page 455 
recitation was made, `all minerals were sold out of this tract of land before the present vendor acquired same, therefore, all minerals are excluded from this conveyance;' that the purpose of said recitation in said deed was to relieve appearer from any and all liability of warranty as to said minerals, but intended therein to convey any interest it might appear to have in and to same.
"Now, Therefore, appearer declared unto me, Notary, that for and in consideration of the premises and of a desire on its part to disclaim any interest in and to the minerals in, on and under said land, and of the sum of $1.00 cash in hand paid, receipt of which is hereby acknowledged, it does by these presents and this act, renounce, release, relinquish, convey and forever quit-claim, without any warranty of title, whatsoever, any rights, title and interest which it may have in and to any and all minerals on, in and under said lands, as hereinabove described."
Both of these instruments are attached to plaintiffs' petition.
Plaintiffs are not attacking the deed of January 3, 1938. Their attack is solely on the instrument of January 13, 1938. The recital in the deed, "all minerals were sold out of this tract of land before present vendor acquired same, therefore, all minerals are excluded from this conveyance," explains itself and it is clear, to our minds, without the second instrument, that the recital was placed in the deed to protect the vendor as warrantor and for no other purpose. (Italics ours.) There was no express reservation of any minerals by the vendor and we are of the opinion an express reservation was necessary, otherwise any minerals under and in the land were conveyed. That it was plaintiffs' intention to convey any and all rights and title to the land and minerals, if there were any owned by them, is made clear in the second instrument, which has been called a quitclaim deed. It is true that plaintiffs were under the impression that they did not own any of the minerals, and we think it is also true that if they had known the minerals had reverted to them, they would have reserved half of them in the deed.
This mistake or error regarding their ownership was not one of fact but was a mistake of law from which they cannot be relieved, for it is undisputed that Mr. Crowder, the land man to whom defendant was referred when he sought to buy the land and with whom he had all dealings prior to the execution of the deed, had at the time the deed was made his list of mineral sales on this land before him and the dates of said sales, and when he delivered the deed to defendant, he furnished him at that time with a copy of the notations of the mineral sales and their dates, all of which were more than ten years old. He therefore had before him all the true facts regarding the prior mineral sales and his mistake or error was as to law applicable to the facts before him and not as to the facts themselves.
The fact that the second instrument is called a quitclaim deed, or disclaimer, can make no difference as to what it really is. It is nothing more or less than an explanation of what vendor intended when it inserted the recital quoted above in the deed. If any consideration was necessary for this instrument to be valid, which we are of the opinion was not, then the consideration in the deed is sufficient.
It is our opinion that if the second instrument is declared null and void and ordered erased from the records, defendant will still under the deed be the true and lawful owner of all minerals attached to the 80 acres of land and to annul and void this second instrument would be only to allow plaintiff, Commercial National Bank in Shreveport, to retract a statement it has solemnly made through its authorized officer before a Notary Public wherein it set out its intentions in executing a deed to the defendant of the 80 acres of land. We might further add that the record is barren of any testimony to show that the minerals had reverted. It is not shown that the land has not been developed and is not producing oil or gas; and it is not shown that the mineral purchasers are still living or that they have died and left no minor children. However, this is only another reason why the demands of plaintiffs should be rejected.
We are of the opinion that the exceptions of no cause and no right of action could have safely been sustained since, in our opinion, the cancellation and annulling of the second instrument would not deprive the defendant of any minerals attached to the 80 acres of land, as they were transferred to defendant by deed of date January 3, 1938. However, since we have *Page 456 
discussed the merits of the case, we prefer to pitch our opinion and judgment there.
The judgment of the lower court is reversed and the demands of plaintiffs are rejected at their costs in both courts.